UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————x

KOROVA MILK BAR OF WHITE PLAINS, INC., :
                                        :
                          Plaintiff,    :
                                        :                    **OPINION AND ORDER**
        - against -                     :
                                        :                      11 Civ. 3327 (ER)
PRE PROPERTIES, LLC and                 :
ALBERT SILVERMAN,                       :
                                        :
                          Defendants.   :

————————————————————————x

     Plaintiff Korova Milk Bar of White Plains, Inc. ("Plaintiff" or "Korova") filed a

Complaint on May 17, 2011 against PRE Properties, LLC ("PRE") and Albert Silverman

("Silverman") (collectively, the "Defendants") alleging violations of 42 U.S.C. §§ 1981 and

1982 and state law claims for malicious prosecution, abuse of process, injurious falsehood, unfair

competition based on disparagement, tortious interference with business relations and fraudulent

misrepresentation.  Doc. 1.  The crux of Plaintiff's case is that it was discriminated against by

Defendants because it served a predominately African-American clientele.  Defendants move

pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings, seeking dismissal of all causes

of action in the Complaint.  Doc. 20.  In opposition to Defendants' motion, Plaintiff requests

leave to amend the Complaint.  For the reasons stated herein, Defendants' motion is GRANTED

in part and DENIED in part.  Plaintiff's request for leave to amend the Complaint is DENIED.

I.     **Background**[1]

    **a.  Facts**

Korova is a New York corporation whose principal offices are located at 211-213 East Post Road in White Plains, New York.  Compl. ¶ 2.  Todd Shenk ("Shenk") and Alex Fatouros ("Fatouros") are Korova's president and vice-president, respectively.  *Id*. ¶ 6.  Defendant Silverman is a resident of the State of New York and is the managing member of Defendant PRE, a limited liability company organized and existing pursuant to the laws of the State of New York.  *Id*. ¶¶ 3, 7.

        **i.  Lease Signing and Amendments to the Lease**

On or about March 21, 2007, Korova, through Shenk and Fatouros, entered into a lease agreement with PRE whereby Korova leased for an initial term of fifteen years the space located at 211-213 East Post Road for use as a restaurant and bar.  *Id*. ¶ 6; Defs.' Ex. C.  Plaintiff alleges that prior to signing the lease agreement, PRE represented to Plaintiff that it had physical possession of the liquor license issued to the previous tenant and that it would transfer the liquor license to Plaintiff at the lease signing.  Compl. ¶¶ 7, 139.  According to Plaintiff, it relied on PRE's representation that it possessed the liquor license and that it would be transferred to Plaintiff, thereby allowing Korova to sell liquor at the establishment immediately upon signing the lease.  *Id.* ¶¶ 140, 142.  The lease signed by Plaintiff on March 21 states the following:

> This lease is specifically conditioned upon the approval by the New York State Liquor Authority of an application to be made by Tenant for an On-Premises Liquor License ("Liquor License").  Tenant agrees to make such an application and shall promptly comply with and carry out the requirements, demands,

---

[1] The following facts are taken from the Complaint ("Compl."), Doc. 1, and documents submitted by the parties which have been deemed by this Court to be proper for consideration.

> requests and rules and regulations of the ABC Board and the New York State
> Liquor Authority so as to expedite the approval of such application and issuance
> of said Liquor License.   In the event such Liquor License shall be denied, the
> Tenant shall have the right to cancel this Lease and Tenant shall have no further
> rights or obligations under this Lease except, Tenant shall forfeit the Security
> Deposit . . . and except as otherwise provided for herein in Article 60.

Defs.' Ex. C, ¶ 59.   Furthermore, according to the lease, Plaintiff had to pay $75,000.00 dollars

in consideration for the liquor license upon signing the lease.   This amount would be held in

escrow pending Plaintiff's receipt of the prior tenant's liquor license.   *Id.* ¶ 60-A.   Plaintiff

alleges that it paid the $75,000.00 dollars consideration.   *See generally* Compl. ¶¶ 8-9.

According to Plaintiff, shortly after executing the lease, Silverman revealed to Plaintiff

that he did not have the liquor license.   *Id.* ¶¶ 10, 143.   On April 5, 2007, in an effort to account

for the missing liquor license, the parties entered into an agreement ("First Lease Amendment")

pursuant to which PRE waived rent payments from March 21, 2007 to July 7, 2007.   *Id.* ¶ 11;

Defs.' Ex. D.   The First Lease Amendment states, "Landlord has accidentally lost the liquor

license which was last held in its possession."   Defs.' Ex. D.   Furthermore, on April 5,

Silverman's attorney told Shenk that the transfer of the license would not be held up and that

Plaintiff should proceed with renovations to the premises.   Compl. ¶ 11.

Korova received its liquor license on October 31, 2007.   *Id.* ¶ 12.   However, Plaintiff

alleges that the liquor license it received from Defendants had expired.   Plaintiff further alleges

that Silverman failed to inform Plaintiff of the license's expiration.   *Id.* ¶ 146.

On November 13, 2007, the parties into an additional agreement ("Second Lease

Amendment") whereby PRE agreed to waive rent payments for an additional period from

September 1, 2007 through October 31, 2007 because "the liquor license applied for by the

Tenant and approved by the New York State Liquor [A]uthority had been delayed in its release

3

to the Tenant."  Defs. Ex. E.  Plaintiff alleges that Silverman's misrepresentation that he had the liquor license caused Korova to suffer a loss in profits as they had to delay the opening of Korova.  Compl. ¶ 13.

### ii.   Allegations of Discrimination

Korova finally opened for business on November 15, 2007.  *Id*. ¶ 13.  According to Plaintiff, "[d]uring its first six months of operation[,] Korova was busy and highly profitable, serving a very diverse clientele."  *Id*. ¶ 14.  However, after the first six months, Korova's managers and owners noticed a "significant decrease" in the number of patrons that frequented the establishment.  *Id*. ¶ 15.  Additionally, they noticed that the number of non African-American patrons had decreased from when Korova had first opened for business.  *Id*.  Plaintiff, upon information and belief, states:

> [T]he decrease in the diversity of Korova's clientele occurred as a result of PRE's agents, specifically Silverman, making comments to the public, employees, and to patrons that frequented Korova that it was an establishment that was a 'black bar' – catering only to African Americans.

*Id*. ¶ 16.

From January through July 2009, Korova's managers observed that the presence of the White Plains Police Department ("WPPD") and the White Plains Fire Department ("WPFD") at Korova was "excessive" compared to their presence at other bars in the area.  *Id*. ¶ 23.  Plaintiff alleges that PRE and Silverman, "through his own initiative," were instrumental in causing the WPPD and WPFD to be called to Korova, "without good cause or justification, in the hopes that Plaintiff would be caught violating a rule, ordinance or law so that PRE could create a record of violations and the corresponding perception that there was ongoing illegal and unsafe activity occurring at the Premises."  *Id*. ¶¶ 24, 68.  On two occasions, Korova was found to be in

violation of a rule, ordinance or law.  First, on February 1, 2009, Korova was charged with selling alcohol to a minor; the result of a forged identification card.  The charge was eventually dismissed.  *Id*. ¶ 26.  Second, on May 31, 2009, the WPFD issued Korova an overcrowding citation for which Plaintiff paid a fine.  *Id*.

On June 30, 2009, Silverman sent Korova a Fifteen Day Notice to Cure ("Notice to Cure") stating that Plaintiff was in violation of the lease as Plaintiff had allegedly "caused, suffered, allowed and/or permitted numerous violations of law to transpire in the Premises."  *Id*. ¶ 27, Ex. A.  The Notice to Cure listed nineteen violations which Plaintiffs allege were based on incident reports "instigated by PRE and/or its agents" to which the WPPD and the WPFD had responded to the premises.  *Id*. ¶ 28.  However, the document did not identify the violations PRE wanted Plaintiff to cure.  *Id*. ¶ 29.

After receiving the Notice to Cure, Shenk made several telephone calls and wrote a letter to PRE seeking clarification as to what PRE wanted Plaintiff to cure.  *Id*. ¶ 30.  PRE did not respond to Shenk's telephone calls or to his letter.  *Id*.  Nevertheless, in response to the Notice to Cure, Plaintiff took the following steps:  (1) purchased and began using a magnetometer wand; (2) installed ropes and stanchions to create a security area at the entrance to the premises; (3) held frequent security staff meetings; and (4) purchased a second "clicker" device to accurately count the number of patrons that entered and exited the premises.  *Id*. ¶ 31.

On July 17, 2009, Silverman contacted Shenk to ask if he was interested in selling Korova.  *Id*. ¶ 32.  Although the exact timing of the conversation is unclear, Shenk and Fatouros explained to Silverman that they were not interested in selling Korova.  *Id*. ¶ 33.  Silverman still did not explain what he wanted Korova to cure pursuant to the Notice to Cure.  *Id*.  During this conversation, Shenk and Fatourus came to "suspect[] that PRE had an ulterior motive behind the

5

Notice to Cure and Shenk asked Silverman, "[W]hat's this really about?  Are you looking to evict us?"  *Id*.  Silverman denied that he was looking to evict Korova and stated that his lawyer had advised him to issue the Notice to Cure.  *Id*.  However, Silverman stated that managers at The Thirsty Turtle, a nearby establishment owned and run by PRE, had told him that Korova's African-American patrons were "scaring away" the customers at The Thirsty Turtle and the Black Bear Saloon, a nearby establishment also owned by PRE.  *Id*. ¶¶ 17, 34.[2]  Silverman further told Shenk, "[I]f I had it my way, there'd be no more than ten of 'them,'" and that "they" were "causing problems at [The Thirsty] Turtle" and "attracting more of them."  *Id*. ¶¶ 18, 35.  Plaintiff states upon information and belief that "them" or "they" referred to Korova's African-American patrons.  *Id*.  Silverman finally told Shenk that he would "never be able to change his crowd."  *Id*. ¶ 35.  Plaintiff alleges upon information and belief that after this conversation, Silverman told employees at The Thirsty Turtle that Korova would soon close.  *Id*. ¶ 33.

On July 24, 2009, PRE served Plaintiff with a three-day notice of termination ("Notice to Terminate").  *Id*. ¶ 37.  Then, on August 14, 2009, PRE initiated an eviction proceeding against Korova.  *Id*. ¶ 38.  In response, Plaintiff filed a "Yellowstone Injunction" with the Supreme Court of the State of New York, County of Westchester Commercial Division ("Supreme Court").  *Id*. ¶ 39.  The Supreme Court denied the injunction and the eviction proceeding was sent for trial to the City Court of the City of White Plains ("City Court").  At the eviction trial before the City Court, Silverman testified that from 2007 to 2009, he observed "unruly behavior

---

[2] The Complaint appears to cite to two different occasions on which Silverman told Plaintiff's owners that Korova's African-American clientele was "scaring away" patrons at nearby establishments; June 2009 and July 17, 2009. Compl. ¶¶ 17, 32-34.  The Court's reading of the allegations in the Complaint supports the inference that this conversation took place on a single occasion, and that occasion was on or about July 17, 2009.

by [Korova's] clientele" and he saw "altercations taking place [at the establishment]."  Compl., Ex. C, Tr. 10:5-8, 11:16-17.

On July 29, 2010, the City Court found for the Plaintiff and denied the attempted eviction.  *Id*. ¶ 41, Ex. B.  The City Court found that the alleged crimes in the Notice to Cure had not been committed by Korova nor by an agent of Korova.  Moreover, Korova did not knowingly or negligently cause or allow the violations to occur on its premises.  *Id*. ¶ 41, Ex. B at 2.  Finally, the City Court concluded that Korova had taken various steps to address the incidents alleged in the Notice to Cure and that PRE had failed to establish a violation of the lease.  *Id*.

Plaintiff alleges, upon information and belief, that "immediately after" the City Court's decision, PRE caused the WPPD, by providing them with false information, to conduct a raid at Korova which resulted in a charge being filed against Korova by the New York State Liquor Authority ("SLA") for the presence of narcotics at the establishment.  *Id*. ¶¶ 43, 100-101.  According to Plaintiff, upon information and belief, PRE intended for the SLA raid to lead to the revocation of Korova's liquor license, which would cause Korova to shut down and prevent it from serving its predominantly African-American clientele.  *Id*. ¶ 44.  However, the WPPD failed to a send a representative or witness to appear at the SLA hearing and on December 27, 2010, the SLA charge against Plaintiff was dismissed.  *Id*. ¶ 45.

In February 2011, PRE commenced a second eviction proceeding against Korova based on alleged overdue tax and insurance obligations.  *Id*. ¶ 47.  According to Plaintiff, Korova's tax and insurance payments were included in the total rent paid to PRE on a monthly basis and the payments were up to date.  *Id*. ¶ 48.  While investigating the allegations in the second eviction notice, Plaintiff learned that in July 2010, the property taxes for the premises had actually decreased.  Nevertheless, PRE had increased Korova's property tax obligation.  Plaintiff alleges,

upon information and belief, that PRE did not increase the property tax obligations for its other tenants. *Id*. ¶ 49.  In response, Plaintiff telephoned PRE's accountant and overheard Silverman state that he was going to initiate eviction proceedings against Plaintiff once again. *Id*. ¶ 51. PRE subsequently agreed to stop "overcharging" Plaintiff for property taxes and confirmed that Plaintiff did not owe back taxes. *Id*. ¶ 50.  Plaintiff alleges, upon information and belief, that the second attempt to evict Korova and shut down the bar "was commenced . . . to eliminate the presence of Plaintiff's predominantly African-American clientele from the area." *Id*. ¶ 52.  The second eviction proceeding was dismissed by the City Court pursuant to a settlement agreement between the parties. *Id*. ¶ 53.

Then, in March 2011, a manager at The Thirsty Turtle, who Plaintiff describes as an "agent of PRE," *id*. ¶ 19, sent a text message to a Korova employee stating the following:  "I would break up with you too for working at a nig fest," *id*. ¶¶ 19, 54, and asking, "[H]ow is the nig fest going?" *Id*. ¶ 65.  Plaintiff, upon information and belief, asserts that the various comments by Silverman and The Thirsty Turtle employee were made in order to divert white patrons from Korova to The Thirsty Turtle and to other nearby establishments owned and operated by PRE.  As a result of the negative comments against Korova, Plaintiff lost white customers to these nearby establishments. *Id*. ¶¶ 20-21.  Further, Plaintiff claims that "[a]s a result of PRE's agents', specifically Silverman's misleading statements, Korova was branded as an unsafe, 'African-American only' bar which caused a substantial decrease in the number of patrons that went to Korova and a subsequent decrease in profits." *Id*. ¶ 111.  Plaintiff claims that PRE and its agents continue to harass Plaintiff in order to shut down the bar.  Upon Plaintiff's information and belief, "it is common knowledge throughout Silverman's company

8

that he wants desperately to have Korova evicted specifically for having a predominantly African-American clientele." *Id.* ¶ 55.

### b. Procedural History

On May 17, 2011, Plaintiff commenced this action by filing a Complaint. Doc. 1. On January 6, 2012, the case was reassigned to the undersigned. Doc. 13. On February 14, 2012, the Court granted the parties' joint request to stay discovery as Defendants had indicated their intent to file a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Doc. 16. As of February 14, 2012, the parties had conducted initial paper discovery but had not yet conducted depositions. *Id.* Defendants filed their Rule 12(c) moving papers on March 29, 2012, Doc. 20, Plaintiff filed its opposition on April 27, 2012, Docs. 23-24, and Defendants submitted their reply on May 4, 2012. Docs. 26-27.

## II.   Discussion

### a. Standard of Review

#### i. General Legal Standard for Motions pursuant to Rule 12(c)

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Court applies the same standard of review to a Rule 12(c) motion as it does to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). However, the court is not required to credit "mere conclusory statements" or "threadbare recitals of the

elements of a cause of action." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

However, the question on a Rule 12(b)(6) motion "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Sikhs for Justice v. Nath*, 10 Civ. 2940 (RWS), --- F. Supp. 2d ----, 2012 WL 4328329, at *15 (S.D.N.Y. Sept. 21, 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiff's claims. *Halebian v. Berv,* 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

### ii. Extrinsic Materials

In ruling on a 12(c) motion, a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein. *Roth v. Jennings,*

489 F.3d 499, 509 (2d Cir. 2007) (reviewing a 12(b)(6) motion); *see also Williams v. City of New York*, 10 Civ. 9594 (CM) (DCF), 2012 WL 547508, at *2 (S.D.N.Y. Feb. 17, 2012) (12(c) motion).  The Court, however, may consider a document that is attached to the complaint, incorporated by reference or integral to the complaint,[3] provided there is no dispute regarding its authenticity, accuracy or relevance.  *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010) (reviewing a 12(b)(6) dismissal) (citations omitted); *see also Piazza v. Florida Union Free Sch. Dist.*, 777 F. Supp. 2d 669, 677 (S.D.N.Y. 2011) (12(c) motion).  The Court may also properly consider documents or information contained in defendant's motion papers if the plaintiff has knowledge or possession of the material and relied on it in drafting the complaint. *Hoy v. Inc. Vill. of Bayville*, 765 F. Supp. 2d 158, 163 (E.D.N.Y. 2011).  Finally, the Court may consider statements set forth in documents of which judicial notice may be taken, but again only where the plaintiff *relied on* the contents of the document in drafting the complaint, *Chambers*, 282 F.3d at 153 (quoting *Int'l Audiotext Network, Inc.*, 62 F.3d at 72), and solely to establish the existence of the opinions or assertions contained therein, rather than for the truth of the matters asserted.  *Global Network Commc'ns, Inc.*, 458 F.3d at 157 (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).

---

[3] Limited quotations or references to a document in a complaint are insufficient to deem an entire document incorporated into the complaint, *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67-68 (2d Cir. 2008) (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)); however, a court may also consider a document that is not incorporated by reference, "where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.  *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153-54 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).  In order for the contents of a document to be deemed *integral* to the complaint, they must be deemed necessary to the plaintiff's statement of a claim under Rule 8.  *See, e.g., Sahu*, 548 F.3d at 68 (concluding that documents quoted in complaint were not "integral" because they were not required to state a claim and thus were "best viewed as tending to establish that the complaint's factual assertions are 'plausible,' and therefore sufficient to survive a motion to dismiss under Rule 12(b)(6)." (citing *Twombly*, 550 U.S. at 557-58)) (internal citation omitted).

Where other extrinsic materials are submitted to the Court for consideration in connection with a 12(c) motion, the additional materials must either be excluded, or the motion must be converted to one for summary judgment under Fed. R. Civ. P. 56 after affording the parties the opportunity to conduct appropriate discovery and submit additional supporting materials.  Fed. R. Civ. P. 12(d); *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (explaining that "the conversion requirement is strictly enforced whenever there is a 'legitimate possibility' that the district court relied on material outside the complaint in ruling on [a Rule 12(b)(6)] motion") (quoting *Amaker v. Weiner*, 179 F.3d 48, 50 (2d Cir. 1999)); *see also id.* at 84 ("Vacatur is required even where the court's ruling simply 'mak[es] a connection not established by the complaint alone' or contains an 'unexplained reference' that 'raises the possibility that it improperly relied on matters outside the pleading in granting the defendant's Rule 12(b) motion'") (quoting *Fonte v. Bd. of Managers of Continental Towers Condo.,* 848 F.2d 24, 25 (2d Cir. 1988)) (alteration in original).  Although the Court must convert a 12(c) motion into a motion for summary judgment when it considers matters outside the pleadings, "the decision to convert is a matter for the court's discretion."  *Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 278 (S.D.N.Y. 2006) (citing *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir. 1988)).  The Court here will not exercise that discretion.

Here, the only documents attached to the Complaint are (1) the Notice to Cure (Ex. A), (2) the City Court's Decision After Trial (Ex. B), and (3) the Transcript of the Eviction Proceeding before the City Court, dated May 11, 2010 (Ex. C).[4]  However, in support of their 12(c) motion, Defendants attach a number of exhibits to their memoranda of law, Docs. 21, 26,

_____

[4] Plaintiff's version of the transcript does not include the first page of the transcript; however, based on the Court's reading of the Complaint, Compl. ¶¶ 40, 112, it has determined that the transcript corresponds to the eviction hearing before the City Court, dated May 11, 2010.

and do not offer any legal authority for why it would be appropriate for the Court to consider these documents.[5]  Exhibits A and B to Defs.' Mem. L., Docs. 21-1 - 2, are copies of the Complaint and Answer and the Court may appropriately take judicial notice of such documents as matters of public record.  *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 245 (S.D.N.Y. 2011).

Exhibits C-E to Defs.' Mem. L., Docs. 21-3 – 5, are copies of the original lease between Plaintiff and Defendants, the First Lease Amendment and Second Lease Amendment.  These exhibits are deemed incorporated by reference because the lease and its subsequent amendments are specifically referenced in the Complaint on multiple occasions, Compl. ¶¶ 6, 11, 27, 42, 59-60, 69, underlie Plaintiff's §§ 1981 and 1982 claims, and were presumably within Plaintiff's possession when the Complaint was filed.  *See generally Robert Smalls Inc. v. Hamilton*, 09 Civ. 7171 (DAB) (JLC), 2010 WL 3238955, at *2 n. 3 (S.D.N.Y. July 19, 2010), *report and recommendation adopted*, 09 Civ. 7171 (DAB), 2010 WL 3238963 (S.D.N.Y. Aug. 11, 2010) (finding that a quitclaim deed not attached to the complaint was nonetheless integral to the complaint and could be considered on a 12(c) motion as "the deed's effect underlies, at a minimum, Plaintiffs' allegations of fraud and fraudulent conveyance"); *Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 297–98 (S.D.N.Y. 2009), *aff'd*, 387 Fed. App'x 50 (2d Cir. 2010) ("[W]here the claim is for breach of contract, the complaint is deemed to incorporate the contract by reference because the contract is integral to the plaintiffs' claim.").  Consideration of these documents does not require converting the instant motion into one for summary judgment.  *See Nechis v. Oxford Health Plans, Inc*., 421 F.3d 96, 100 (2d Cir. 2005) (documents

_____
[5] Plaintiff has not objected to Defendants' submission of these exhibits in support of their 12(c) motion.

13

incorporated by reference may be considered on a motion to dismiss without triggering conversion).[6]

In opposition to the 12(c) motion, Plaintiff submits an affidavit by Fatouros along with various exhibits.  Doc. 24.  Plaintiff does not provide any legal authority for why it would be appropriate for the Court to consider these documents.[7]  Defendants oppose these submissions and argue that "the affidavit discusses matters clearly outside Mr. Fatouros' personal knowledge and introduces new alleged statements that are not delineated in either the complaint or plaintiff's answers to interrogatories."  Defs.' Reply Mem. L. 1.

---

[6] The Court declines to consider the remainder of Defendants' exhibits, Exhibits F-K of Defs.' Mem. L., Docs. 21-6 – 11, and Exhibit A of Defs.' Reply Mem. L., Doc. 26-1.

Exhibit F, Doc. 21-6, is a set of reports from the WPPD and WPFD listing complaints, violations and arrests at Korova through May 24, 2009.  The Complaint contains one reference, Compl. ¶ 74, regarding Silverman's request for these records.  Such a limited reference is insufficient to render the reports integral to the Complaint, especially given their questionable relevance as the reported violations were the subject of the eviction hearing before the City Court which ultimately found that Defendants had failed to establish that Korova had violated the lease.

As to Exhibits G-I, Docs. 21-7 - 9, which include The Thirsty Turtle's Certificate of Assumed Name, an SLA application form, and Tri-Kelly's SLA print-out, even if the Court could theoretically take judicial notice of these documents as public records, the documents are not integral to the Complaint, and Plaintiff did not rely on the terms or effect of these documents in drafting the Complaint.  *Global Network Communications, Inc.,* 458 F.3d at 156-67.  Such documents are more properly considered on summary judgment.  *Eaves*, 785 F. Supp. 2d at 245-46.

The Court will also disregard Exhibits J-K, Docs. 21-10 – 11, which include correspondence between Plaintiff and Defendants regarding the Notice to Cure, as the content of the letters is not integral to the Complaint, Defendants' response letter is undated and the importance of the documents is to assert Defendants' contradictory view of events.

Finally, the Court declines to consider Exhibit A to Defs.' Reply Mem. L., Doc. 26-1, which is a copy of the text message from the manager at The Thirsty Turtle addressed in the Complaint.  Although a portion of the text message is at the heart of Plaintiff's discrimination claims, Plaintiff has quoted the relevant text in the Complaint and does not appear to have relied on the text message as a whole to the extent of pointing in favor of this Court's consideration of the submission.  Further, Defendants do not cite to any legal authority or provide any explanation as to why the Court should consider this subsequent submission.

[7] Exhibit A to Plaintiff's Mem. L., Doc. 24-1, is a copy of the Complaint.  As previously noted, the Court may appropriately take judicial notice of such document as a matter of public record.  *Eaves*, 785 F. Supp. 2d at 245.

Aside from the Fatouros affidavit, which expands on the facts set forth in the Complaint, Plaintiff's exhibits consist of police incident reports for Korova, The Thirsty Turtle and Black Bear Saloon from April 2007 through August 2009 (Exs. B-D), and documents meant to establish a connection between Defendants and The Thirsty Turtle and Black Bear Saloon (Exs. E-G).  There is no indication that these documents are incorporated by reference or integral to the Complaint; the main effect of these documents is to strengthen Plaintiff's claims against Defendants.  However, "Plaintiff[] may no more amend the [complaint] through motion papers, than Defendants may supplement the record with documents not integral to the [complaint]." *Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 330 (S.D.N.Y. 2010) (quoting *Yarborough v. Queens Auto Mall, Inc.,* 08 Civ. 3179, 2010 WL 1223584, at *2 (E.D.N.Y. Mar. 23, 2010) ("Plaintiff may not amend his complaint through his motion papers.")).  Thus, the Court declines to consider these exhibits.

Furthermore, the Court notes that discovery was specifically stayed pending the ruling on the 12(c) motion, Doc. 16, and thus the Court is disinclined to convert the instant motion into one for summary judgment.  *Wajilam Exports (Singapore) Pte. Ltd.*, 475 F. Supp. 2d at 278 ("There would be little point in considering a summary judgment motion when significant relevant facts may yet be discovered."); *see also Hoy*, 765 F. Supp. 2d at 164 (declining to convert a Rule 12(b)(6) motion into a motion for summary judgment as the plaintiffs "are entitled to discovery before having to oppose a motion for summary judgment.").  Accordingly, the motion for judgment on the pleadings will be considered under the aforementioned standard of review, disregarding additional materials submitted by the parties that are deemed extraneous to the Complaint, accepting all allegations contained in the Complaint as true and drawing all reasonable inferences in favor of the Plaintiff.  *See Wajilam Exports (Singapore) Pte. Ltd.*, 475 F.

Supp. 2d at 278.  "The complaint will not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle it to relief."  *Id.* (citing to *Greco v. Trauner, Cohen & Thomas, L.L.P.,* 412 F.3d 360, 363 (2d Cir. 2005)).

### b.  Section 1981 and 1982 Claims

According to Plaintiff, Defendants impermissibly discriminated against it on the basis of race and attempted to deny Plaintiff its right to enforce its contract, i.e. the lease, with PRE, and its right to contract with its patrons, all in violation of 42 U.S.C. §§ 1981 and 1982.  Compl. ¶¶ 56-69.  Specifically, Defendants sought to evict Plaintiff because the vast majority of Korova's patrons are African-American.  *Id.* ¶ 60.  To that effect, Defendants allegedly provided false information to the WPPD which caused the WPPD to conduct a raid at Korova, and which ultimately led to the SLA charge for "narcotics at establishment" that was later dismissed.  PRE also tried to evict Korova on two occasions without cause or justification.  *Id.* ¶¶ 61, 69.

Section 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  For the purposes of § 1981, the term "make and enforce contracts" includes, "[T]he making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  Section 1982 is similar to § 1981, "except that it focuse[s], not upon rights to make and to enforce contracts, but rights related to the ownership of property."  *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446, 128 S. Ct. 1951, 1955, 170 L. Ed. 2d 864 (2008).  Section 1982 states, in relevant part, "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."  42 U.S.C. § 1982.  Sections

16

1981 and 1982 are "generally construed in pari materia." *Puglisi v. Underhill Park Taxpayer Ass'n*, 947 F. Supp. 673, 699 (S.D.N.Y. 1996), *aff'd sub nom. Puglisi v. Underhill Park Taxpayers Assoc.*, 125 F.3d 844 (2d Cir. 1997) (citation and internal quotation marks omitted).

To state a claim for relief under Sections 1981 and 1982, a plaintiff must allege the following:  (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant;[8] and (3) the discrimination concerned one or more of the activities enumerated in Sections 1981 or 1982, such as the making or enforcement of contracts or the purchase and lease of property.  *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993); *cert. denied,* 516 U.S. 824, 116 S.Ct. 88, 133 L. Ed. 2d 45 (1995); *Puglisi*, 947 F. Supp. at 700.  Additionally, a plaintiff does not have to be a member of a racial minority to bring a claim under these statutes, but can be a non-minority plaintiff alleging personal injury stemming from a defendant's discriminatory conduct against a racial minority. *Id.*; *Pisello v. Town of Brookhaven*, 933 F. Supp. 202, 215 (E.D.N.Y. 1996).

The necessary elements of a § 1981 or § 1982 claim are "actions that were racially motivated and purposefully discriminatory." *Jenkins v. Arcade Bldg. Maint.*, 44 F. Supp. 2d 524,

---

[8] In its opposition to Defendants' motion, Plaintiff argues that "binding case law from the Second Circuit states that a plaintiff is not required to offer proof of discriminatory intent as part of its prima facie case [under § 1982]," Pls.' Opp. Mem. L. 15, and cites *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032 (2d Cir. 1979) as support.  However, as noted by Defendants, Plaintiff misreads *Robinson*, as that case dealt with the Fair Housing Act, 42 U.S.C. § 3604, and not § 1982, when it stated that "in order to prove a prima facie case of race discrimination plaintiffs needed to show only that the action complained of had a racially discriminatory effect; they were not required to show that the defendants acted with racially discriminatory motivation."  610 F.2d at 1036.  Section 1982 plainly requires a showing of discriminatory intent. *Sanders v. Grenadier Realty, Inc.,* 367 Fed. App'x 173, 174 (2d Cir. 2010) (citing *Shaare Tefila Congregation v. Cobb,* 481 U.S. 615, 617, 107 S.Ct. 2019, 96 L. Ed. 2d 594 (1987)); *Fair Hous. Justice Ctr., Inc. v. Edgewater Park Owners Co-op., Inc.*, 10 Civ. 912 (RPP), 2012 WL 762323, at *7 (S.D.N.Y. Mar. 9, 2012) (citing *General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 388–89, 102 S.Ct. 3141, 73 L. Ed. 2d 835 (1982)); *see also MHANY Mgmt. Inc. v. Cnty. of Nassau,* 843 F. Supp. 2d 287, 337 (E.D.N.Y. 2012) (a § 1982 plaintiff "must demonstrate that he was intentionally deprived of his property on account of his race, for while § 1982 does not use the phrase discrimination based on race, that is its plain meaning") (citations and internal quotation marks omitted).

528 (S.D.N.Y. 1999) (citing *General Bldg. Contractors Ass'n,* 458 U.S. at 391); *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 295 (S.D.N.Y. 2011).  "Identifying evidence of discriminatory intent requires an expansive approach to the record, since plaintiffs in discrimination suits often must rely on the cumulative weight of circumstantial evidence, and a defendant is unlikely to leave a smoking gun."  *Wong v. Yoo*, 649 F. Supp. 2d 34, 69 (E.D.N.Y. 2009) (quoting *Norton v. Sam's Club,* 145 F.3d 114, 119 (2d Cir. 1998)) (internal quotation marks omitted).

In order to survive a motion to dismiss (or, in this case, a motion for judgment on the pleadings), "the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically pleaded in the complaint." *Jenkins*, 44 F. Supp. 2d at 528 (citation and internal quotation marks omitted); *see also Sanders,* 367 Fed. App'x at 175 (summary order) (upholding district court's dismissal of § 1982 claim where "plaintiffs [did] not allege any facts supporting an inference of racial animus").  When discriminatory intent is at issue, "courts are cautious of summary adjudication." *Hicks v. IBM*, 44 F. Supp. 2d 593, 598 (S.D.N.Y. 1999).  However, "[c]onclusory or naked allegations" are insufficient; "[f]act-specific allegations of a causal link between the defendant's actions and the plaintiff's race are required." *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 338 (S.D.N.Y. 1999), *aff'd sub nom. Dove v. O'Hare*, 210 F.3d 354 (2d Cir. 2000); *see also Dickerson v. State Farm Fire & Cas. Co.,* 95 Civ. 10733, 1996 WL 445076, at *3 (S.D.N.Y. Aug. 1, 1996) ("It is not enough merely to assert that the defendant took adverse action against the plaintiff, and that the action was the product of racial animus. The complaint must allege specific facts supporting both the existence of the racial animus and the inference of a link between the adverse treatment and the racial animus.").  Finally, a complaint that sets forth

"other possible motives" for the alleged conduct, and does not contain specific facts supporting a claim of racial animus, "contradicts a claim of racial discrimination."  *Hicks*, 44 F. Supp. 2d at 598.

Here, Defendants do not contest that Plaintiff has standing to bring suit under §§ 1981 and 1982 on the basis of its allegation that it has been injured by discriminatory actions stemming from its relationship with minority individuals.  They do, however, contend that Plaintiff's Complaint does not adequately allege intentional discrimination or third-party contract interference concerning § 1981.  Defs.' Mem. L. 6-9.

### i.  Intent to Discriminate on the Basis of Race

Defendants argue that Plaintiff fails to allege sufficient facts to establish the required discriminatory intent under §§ 1981 and 1982.  Specifically, Defendants assert that there is no causal connection between the allegedly discriminatory statements or actions cited by Plaintiff and the Defendants' conduct.  *See* Defs.' Mem. L. 8-12.

However, Plaintiff's Complaint contains detailed allegations of specific conduct and statements which, if proven at trial, could give rise to an inference of discrimination.  Plaintiff alleges that after receiving the Notice to Cure, Shenk and Fatouros spoke with Silverman, who stated that he had been told that Korova's African-American patrons were "scaring away the customers at The Thirsty Turtle and the Black Bear Saloon, establishments owned by PRE. Compl. ¶¶ 17, 34.  During this conversation, Silverman further told Shenk, "[I]f I had it my way, there'd be no more than ten of 'them'" and that "they" were "causing problems at [The Thirsty] Turtle" and "attracting more of them."  *Id*. ¶¶ 18, 35.  Plaintiff states that "them" or "they" referred to Korova's African-American patrons.  *Id*.  Silverman then told Shenk that he would "never be able to change his crowd."  *Id*. ¶ 35.  Plaintiff additionally alleges that PRE's agents

19

and Silverman made comments to the public, Korova's employees and to patrons that frequented Korova that it was a "black bar," catering only to African-Americans.  *Id.* ¶ 16.  Finally, Plaintiff alleges that the manager of The Thirsty Turtle, who is an agent of PRE, referred to Korova as a "nig fest."  *Id.* ¶¶ 19, 54, 65. [9]  At the pleading stage, such statements, combined with two efforts on the part of Defendants to evict Plaintiff on grounds that Plaintiff claims are essentially baseless, are sufficient to support §§ 1981 and 1982 claims.  *Hicks*, 44 F. Supp. 2d at 598 (in an employment discrimination action under § 1981, comments directed against African-Americans, including "send them to school, clean them up and they still belong in the cotton field" and "I'm tired of black people taking taxes," were "sufficient to give rise to an inference of discriminatory intent" and sustain a § 1981 claim against a 12(b)(6) motion); *Long v. Aronov Realty Mgmt., Inc.*, 645 F. Supp. 2d 1008, 1018 (M.D. Ala. 2009) (in an analysis under §§ 1981 and 1982, the court found direct evidence of discriminatory intent when defendant told plaintiff that "they didn't want a black club there" and they didn't want a club resembling "Celebrations," which had been a hip hop bar.)

Defendants, however, argue that Silverman's comment, "no more than ten of them," is insufficient to show racial animus.  Defs.' Reply Mem. L. 5.  They cite *Tellock v. Davis*, 02 Civ. 4311 (FB), 2002 WL 31433589 (E.D.N.Y. Oct. 31, 2002), *aff'd,* 84 Fed. App'x 109 (2d Cir. 2003), for the proposition that racially charged comments to an African-American tenant,

---

[9] Defendants concede that the "nig fest" comment is direct evidence of discriminatory intent; however, they argue that the manager of The Thirsty Turtle was not a decision-maker of PRE who could have been involved with the decision to commence eviction proceedings against the Plaintiff.  Defs.' Mem. L. 11-12.  As already discussed, on a motion for judgment on the pleadings, the Court is required to accept Plaintiff's allegations in the Complaint as true. Accordingly, the Court must accept as true that the manager of The Thirsty Turtle was an agent of PRE and Defendants can more appropriately raise this argument on summary judgment.

including references to "you people" and plaintiff's "kind of people," before commencing a

residential eviction proceeding was not enough to state a § 1981 or § 1982 claim.  Defs.' Reply

Mem. L. 5.  However, the facts in *Tellock* are dramatically different from those here, as in that

case, the court reviewed plaintiff's claims in the context of a preliminary injunction and held that

any possible finding of racial discrimination by the aforementioned statements was undermined

by the defendants' four previous renewals of plaintiff's lease, plaintiff's seven-year occupancy of

the apartment without a racial incident and defendants' repeated offers to once again renew

plaintiff's lease, including an offer of renewal made after a reference of "you people" and

"impl[ication] that all African-Americans were liars."  *Tellock*, 2002 WL 31433589, at *6

(citations and internal quotation marks omitted).  Here, on the other hand, Korova operated for

only eight months before Silverman's alleged discriminatory statements; there is no long-term

relationship between the parties which could weigh against considering the racially charged

language as evidence of discriminatory intent.

Finally, Defendants claim that Silverman's alleged comment that Korova's African-

American patrons were "scaring away" patrons at nearby bars was nothing more than a "stray

mark" wholly "unrelated to the decisional process" to evict Korova.  Defs.' Mem. L. 12.

Defendants cite to cases outside this Circuit, which discuss employment or housing

discrimination decisions, for the proposition that an isolated discriminatory remark unrelated to

the decisional process complained of by a plaintiff is not indicative of intentional discrimination,

*Campbell v. Robb*, 162 Fed. App'x 460, 467 (6th Cir. 2006); *PAS Communications, Inc. v. Sprint

Corp.*, 139 F. Supp. 2d 1149, 1183-84 (D. Kan. 2001); *Inland Mediation Bd. v. City of Pomona*,

158 F. Supp. 2d 1120, 1148-49 (C.D. Cal. 2001).  Further, Defendants argue that Silverman's

comments were not related to the eviction proceeding as he stated that the Notice to Cure and

eviction proceeding were based on his concern for criminal activity at Korova.  Defs.' Mem. L.

12.  Here, however, there is a sufficient proximity in time between Silverman's alleged

discriminatory statements and the issuance of the Notice to Cure and eviction proceeding to infer

that Silverman's statements were more than just isolated stray remarks.  *Soules v. U.S. Dept. of

Hous. & Urban Dev.*, 967 F.2d 817, 824 (2d Cir. 1992) ("Openly discriminatory oral statements

merit similarly straightforward treatment.").  Therefore, after reviewing the totality of

Defendants' comments, coupled with their efforts to evict Plaintiff, the Court finds that a

reasonable inference may be drawn that Defendants' conduct was motivated by a desire to shut

down Korova because of its predominantly African-American clientele.

### ii.  Discrimination Concerning the Making and Enforcement of Contracts

Section 1981 defines the term "mak[ing] and enforc[ing] contracts" as including "the

making, performance, modification, and termination of contracts, and the enjoyment of all

benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

As a result, "Section 1981 offers relief when racial discrimination blocks the creation of a

contractual relationship, as well as when racial discrimination impairs an existing contractual

relationship, so long as the plaintiff has or would have rights under the existing or proposed

contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476, 126 S. Ct. 1246,

1250, 163 L. Ed. 2d 1069 (2006).  Moreover, § 1981 protects against the actions of third parties,

as well as the actions of a directly contracting party.  *Ginx, Inc. v. Soho Alliance*, 720 F. Supp. 2d

342, 358 (S.D.N.Y. 2010) (citing *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 75

(2d Cir. 2000) and *Faraca v. Clements,* 506 F.2d 956, 959 (5th Cir. 1975)).

Plaintiff identifies two contractual relationships that were allegedly hindered by

Defendants' racially motivated conduct:  (1) Korova's direct relationship with PRE and (2)

Korova's relationship with its future African-American patrons, a form of interference with prospective business relations.  Compl. ¶ 59.

With respect to the first contractual relationship, Korova's relationship with PRE, neither party addresses the merits of this argument in their memoranda of law.  However, the Court finds that Plaintiff has sufficiently set forth in its Complaint that Defendants' alleged discrimination, expressed through Defendants' attempts to evict Korova, adversely affected Plaintiff's rights under the lease with PRE in violation of § 1981.  Accordingly, at this early stage in the litigation, Defendants' motion for judgment on the pleadings as to Plaintiff's contractual relationship with PRE under § 1981 is DENIED.

However, with respect to the second contractual relationship, Korova's relationship with its future African-American patrons, the Court finds otherwise.  Section 1981 protects against the interference with a third-party contract, but liability only attaches to persons who actually had the power or authority to prevent the plaintiff from entering into a contract with the third party. *Ginx, Inc.*, 720 F. Supp. 2d at 357-58 (citing *Harris v. Allstate Ins. Co.,* 300 F.3d 1183, 1197 (10th Cir. 2002) (requiring a showing "that the party both possessed sufficient authority to significantly interfere with the individual's ability to obtain contracts with third parties, and that the party actually exercised that authority to the individual's detriment")).  Defendants do not contest that they had the power to interfere with contracts between Korova and its African-American patrons and therefore the Court will not address this argument.

However, Defendants do contest that no claim lies under § 1981's "making and enforcing of contracts" clause for interference with Korova's ability to serve the public generally, rather than with some specific prospective business relationship, Defs.' Mem. L. 7, and cite *Ginx, Inc.* in support of their proposition.  *Ginx* involved § 1981 claims by a plaintiff bar, which alleged

that defendants, community group leaders, interfered with its right to enter into prospective contracts by opposing the issuance of a liquor license to plaintiff. *Ginx, Inc.*, 720 F. Supp. 2d at 357. Specifically, the plaintiff alleged that it was prevented from future contracts with customers who would have visited its establishment if defendants' use of the legal process had not contributed to its termination. *Id.* The court explained that "particular and specific business opportunities must be identified before a claim for third-party interference can be stated." *Id.* at 362. In *Ginx*, since the plaintiff "merely allege[d] possible loss of future opportunities with unnamed persons, rather than the loss of an identified business relationship that was the subject of the interference," the court dismissed plaintiffs' § 1981 claim. *Id.* at 360. Similarly here, Defendants claim that Plaintiff has failed to identify specific contracts with identified patrons which were allegedly impeded by Defendant's discriminatory conduct. Defs.' Mem. L. 10.

In response, Plaintiff argues that the specific business opportunities that were lost were those between Plaintiff and the clientele that had frequented, and would continue to frequent, Korova but for Defendants' discriminatory words and actions, Pl.'s Opp. Mem. L. 12, and urges the Court to rely on *Rowe Entertainment, Inc. v. William Morris Agency, Inc.,* 2000 WL 896929, at *11-12 (S.D.N.Y. July 6, 2000). Plaintiff's reliance on *Rowe* is misplaced. In *Rowe*, the court denied a motion to dismiss a § 1981 complaint brought by five African-American concert promoters, who alleged that certain white-controlled booking agencies and concert promoters blocked their ability to promote concerts. *Id.* Their amended complaint alleged that plaintiffs were excluded from co-promotion opportunities and from bidding on contracts to promote specific, "identifiable tours by well-known artists," including Toni Braxton, Janet Jackson and Maxwell. *Ginx, Inc.*, 720 F. Supp. 2d at 362 (discussing *Rowe*). Thus, the court upheld the principle that "particular and specific business opportunities must be identified before a claim for

third-party interference can be stated." *Id.* (discussing *Rowe*).  Here, in contrast with *Rowe*, Plaintiff merely alleges that that it lost contractual opportunities with clientele who did and would have frequented Korova, without providing specific details regarding this speculative class.  As Plaintiff has not identified any specific contract that the Defendants prevented Korova from making, Defendants' motion for judgment on the pleadings as to Plaintiff's § 1981 third-party contract claim is GRANTED.

### iii.  Discrimination Concerning Property Rights

As the Court has already found sufficient evidence to establish a reasonable inference of discriminatory intent by Defendants, the remaining question for § 1982 is whether Plaintiff has adequately alleged that Defendants impaired its property rights under the lease.  In their motion for judgment on the pleadings, Defendants do not address this issue and thus implicitly concede that Plaintiff's property rights were impaired.  However, the Court will still examine the Complaint to determine if it sufficiently states a claim for this cause of action.

To state a valid claim under § 1982, a plaintiff must allege that he was intentionally "deprived of a property right" because of his race.  *Johnston v. Apple Inc.*, 11 Civ. 3321 (JSR), 2011 WL 4916305, at *2 (S.D.N.Y. Oct. 14, 2011) (citations and internal quotation marks omitted).  "Section 1982 is broad in scope and prohibited activity . . . includes, but is not limited to, the refusal to rent or sell property.  The property rights protected under § 1982 are those included in the 'bundle of rights for which an individual pays' when he or she leases a piece of property."  *Bradley v. Carydale Enterprises*, 730 F. Supp. 709, 717 (E.D. Va. 1989) (quoting *Tillman v. Wheaton–Haven Recreation Ass'n,* 410 U.S. 431, 437, 93 S.Ct. 1090, 1093, 35 L. Ed. 2d 403 (1973)).  Therefore, § 1982 "may be violated when a party restricts a tenant's use of his or her property."  *Id.* (citing *City of Memphis v. Greene,* 451 U.S. 100, 120, 101 S.Ct. 1584,

1596, 67 L. Ed. 2d 769 (1981)).  Further, "[i]t is clear that § 1982 is broad enough to include

post-acquisition discrimination." *Jackson v. Chicago Hous. Auth.*, 08 Civ. 278, 2008 WL

4534151, at *2 (N.D. Ill. Oct. 7, 2008) (citing *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 430,

88 S.Ct. 2186, 2198 (1968)); *see also Walker v. Pointer*, 304 F. Supp. 56, 63 (N.D. Tex. 1969)

(holding that "[t]he racially motivated termination of the lease violated section 1982 which

expressly protects the right to 'lease' real property.").

Plaintiff's Complaint alleges, "[u]pon information and belief, [that] because Plaintiff's

clientele are primarily African-Americans, PRE interfered with Korova's lease of real property,

through the filing of two baseless eviction proceedings in order to shut down Korova . . . ."

Compl. ¶ 69.  At the pleading stage, Plaintiff has sufficiently set forth a claim pursuant to §

1982.  *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 236-37, 90 S. Ct. 400, 404, 24 L. Ed.

2d 386 (1969) (holding that a white plaintiff who was denied the ability to assign his

membership share in a corporation to an African-American, due to racially motivated

interference by the corporation, and was subsequently expelled from the corporation, had a

cognizable § 1982 claim); *Woods-Drake v. Lundy*, 667 F.2d 1198, 1202 (5th Cir. 1982)

(upholding a district court finding that defendant had violated § 1982 when he evicted plaintiffs

from their home because they had had black guests); *Jackson*, 2008 WL 4534151, at *2 ("Any

intimidation of [plaintiff] after she moved in, based on her race, could interfere with her ability to

use her property as she sees fit.  We therefore find that [plaintiff] has stated a plausible claim

under § 1982 for such ongoing intimidation").  Accordingly, Defendants' motion for judgment

on the pleadings with respect to Plaintiff's 1982 claim is DENIED.

### c.  State Law Claims

In addition to alleging infringement of 42 U.S.C. §§ 1981 and 1982, Plaintiff asserts the following state law claims:  (1) malicious prosecution; (2) abuse of process; (3) injurious falsehood; (4) unfair competition based on disparagement; (5) tortious interference with business relations; and (6) fraudulent representation.

### i.  Malicious Prosecution

Plaintiff argues that Defendants' initiation and continuation of the first eviction proceeding against Korova, since most of Korova's patrons were African-American, constituted malicious prosecution.  Compl. ¶ 71.[10]  To establish a claim for malicious prosecution under New York law, a plaintiff must show:  "(1) the initiation of an action by the defendant against the plaintiff, (2) begun with malice, (3) without probable cause to believe it can succeed, (4) that ends in failure or, in other words, terminates in favor of the plaintiff."  *Sankin v. Abeshouse*, 545 F. Supp. 2d 324, 327 (S.D.N.Y. 2008) (citing *O'Brien v. Alexander,* 101 F.3d 1479 (2d Cir. 1996)).  Furthermore, when the prior action was civil in nature, the plaintiff "must also show [that] special damages resulted from the action."  *Id*. (citing *Engel v. CBS, Inc.,* 93 N.Y.2d 195, 689 N.Y.S.2d 411, 711 N.E.2d 626 (N.Y. 1999); *Honzawa v. Honzawa,* 268 A.D.2d 327, 701 N.Y.S.2d 411 (N.Y. App. Div. 1st Dep't 2000); and *Dudick v. Gulyas,* 277 A.D.2d 686, 716 N.Y.S.2d 407 (N.Y. App. Div. 3d Dep't 2000)).  Under New York Law, the "special injury" must entail "some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit."  *Id*. (quoting *Engel,* 93 N.Y.2d at 205) (internal citation marks omitted).  However, New York law "recognizes loss of business as

---

[10] As discussed by Defendants, Plaintiff has failed to oppose, and thus implicitly concedes, that the SLA proceeding and the second eviction proceeding are not the basis of the malicious prosecution claim.  Defs.' Reply Mem. L. 6. Accordingly, the Court will only address the first eviction proceeding.

a special injury in a case for malicious prosecution," as long as Plaintiff sufficiently identifies the specific business lost as a result of the civil proceeding.  *In re Eerie World Entm't, L.L.C.*, 00-13708 (ALG), 2006 WL 1288578, at *8 (Bankr. S.D.N.Y. Apr. 28, 2006) (special injury when plaintiff showed a specific and verifiable loss of income by providing the names of clients that refused to do business when they learned of the pending action).

Here, Plaintiff alleges that the special injury it suffered from the alleged malicious prosecution was the "interfere[nce] with Korova's Lease of the Premises [which] caused Korova eventually to shut down—preventing Korova from doing business."  Pl.'s Opp. Mem. L. 19. However, the allegations of Korova being forced to shut down are not specifically alleged in the Complaint, and as such, are not properly before the Court's consideration; therefore, the only evidence of special damages before the Court is the alleged interference with Korova's lease.[11] "As set forth in *Engel*, attorneys' fees and cost associated with defending a lawsuit do not rise to the level necessary to show special damages."  *Sankin*, 545 F. Supp. 2d at 328 (holding that vague claims of loss of business, without specifics, do not satisfy the requirement).  Accordingly, Plaintiff has not pled, and this Court does not find in the Complaint, any special damages resulting from the first eviction proceeding.  Therefore, Defendants' motion for judgment on the pleadings as to Plaintiff's malicious prosecution claim is GRANTED.

### ii.  Abuse of Process

The statute of limitations for abuse of process claims brought pursuant to New York State law is one year.  *See* N.Y. C.P.L.R. § 215(3); *Lewis v. Snow*, 01 Civ. 7785 (CBM), 2003 WL 22077457, at *12 (S.D.N.Y. Sept. 8, 2003).  Further, "since accrual of a cause of action for abuse

---

[11] Moreover, assuming arguendo, that Korova has closed, it is not clear that a reasonable inference can be drawn that the first eviction was the cause, given the passage of time since that proceeding, and the subsequent events that have transpired.

of process need not await the termination of an action in claimant's favor, the statute of

limitations expires one year from institution of the process, that is, from the . . . complaint."

*Lucas v. Novogratz,* 01 Civ. 5445 (GEL), 2002 WL 31844913, at *6 (S.D.N.Y. Dec. 18, 2002)

(citation and internal quotation marks omitted).   Accordingly, as Plaintiff's Complaint was filed

on May 17, 2011, any acts alleged prior to May 17, 2010 are time-barred.  The Complaint alleges

two actions by Defendants after May 17, 2010:  (1) after the City Court found for Plaintiff in the

first eviction proceeding on July 29, 2010, Defendants allegedly caused the WPPD, by providing

them with false information, to conduct a raid at Korova which resulted in an SLA charge for

narcotics at the establishment and (2) Defendants commenced a second eviction proceeding in

February 2011.

       In order to state a claim for abuse of process under New York common law, a plaintiff

must allege:  (1) use of a regularly issued legal process, either civil or criminal (2) with the intent

to do harm without excuse or justification and (3) the use of process in a "perverted manner" to

obtain a collateral objective.  *Lewis*, 2003 WL 22077457, at *12 (quoting *New York Stock*

*Exchange, Inc. v. Gahary,* 196 F. Supp .2d 401, 415 (S.D.N.Y. 2002)) (internal quotation marks

omitted).

       Courts define the necessary legal process as a "direction or demand that the person to

whom it is directed perform or refrain from the doing of some prescribed act."  *Nickerson v.*

*Commc'n Workers of Am. Local 1171*, 504 Civ. 875 (NPM), 2005 WL 1331122, at *8 (N.D.N.Y.

May 31, 2005) (citation and internal quotation marks omitted).  Furthermore, the legal process

must have been issued by or filed in a court.  *Id.*

       As to the collateral objective requirement, the pursuit of such objective must occur *after*

the process is issued, "the mere act of issuing process does not give rise to a claim," *Lopez v.*

29

*City of New York,* 901 F. Supp. 684, 691 (S.D.N.Y. 1995) (emphasis added), or defendant must have acted to deprive plaintiff of property "under color of process." *Williams v. Williams*, 23 N.Y.2d 592, 596, 246 N.E.2d 333, 335 (N.Y. 1969). Additionally, the collateral objective is not satisfied merely by showing a malicious motive; there must be an "improper purpose" for the use of such process, "i.e. something other than the purpose for which the law created it." *De Santis v. City of New York,* No. 10 Civ. 3508, 2011 WL 4005331, at *8 (S.D.N.Y. Aug. 29, 2011) (citations omitted) (dismissing malicious abuse-of-process claim where plaintiff failed to allege in his complaint that a detective took any actions following the issuance of process, such as economically harming, extorting, blackmailing, or otherwise coercing plaintiff); *see also Perry v. Manocherian,* 675 F. Supp. 1417, 1429 (S.D.N.Y. 1987) (holding that issuance of a summons and complaint, even if made with the intent to coerce settlement and create bad publicity for the defendant, does not constitute abuse of process); *Ann–Margret v. High Soc. Magazine, Inc.,* 498 F. Supp. 401, 407 (S.D.N.Y. 1980) (holding that interference which results in a loss of business, injury to reputation, or expense arising from litigation does not constitute abuse of process).

Here, Plaintiff argues that the process at issue includes the commencement of the SLA proceeding. However, the SLA proceeding does not fall within the definition of "process" for the purpose of an abuse of process claim in New York because it is not a court proceeding. Similarly, the second eviction proceeding does not fall within the definition of "collateral objective" since Plaintiff does not allege that Defendants interfered with its property under color of process, other than stating that Defendants intended to cause economic injury to Korova and ultimately force the business to close. Accordingly, Defendants' motion for judgment on the pleadings for the abuse of process claim is GRANTED.

30

### iii.   Injurious Falsehood

The tort of injurious falsehood "consists of the knowing publication of false matter derogatory to the plaintiff's business of a kind calculated to prevent others from dealing with the business or otherwise interfering with its relations with others, to its detriment."  *Kasada, Inc. v. Access Capital, Inc.,* 01 Civ. 8893, 2004 WL 2903776, at *15 (S.D.N.Y. Dec. 14, 2004) (quoting *Waste Distillation Tech., Inc. v. Blasland & Bouck Engineers, P.C.,* 136 A.D.2d 633, 523 N.Y.S.2d 875, 877 (N.Y. App. Div. 2d Dep't 1988)) (internal citation marks omitted).  Injurious falsehood is governed by a one-year statute of limitations.  N.Y. C.P.L.R. § 215(3); *see also Riddell Sports Inc. v. Brooks*, 872 F. Supp. 73, 80 (S.D.N.Y. 1995).  The elements of a claim of injurious falsehoods are:  (1) falsity of the alleged statements; (2) publication to a third person; (3) malice; and (4) special damages.  *Kasada*, 2004 WL 2903776 at *16 (citation omitted).  "The cause of action differs from defamation in that a defamatory statement impugns the basic integrity or creditworthiness of a business while an *injurious falsehood is confined to denigrating the quality of the plaintiff's business's goods or services*."  *Berwick v. New World Network Int'l, Ltd.*, 06 Civ. 2641 (JGK), 2007 WL 949767, at *15 (S.D.N.Y. Mar. 28, 2007) (citations and internal quotation marks omitted) (emphasis added); *see also id.* (citing *Cunningham v. Hagedorn,* 72 A.D.2d 702, 422 N.Y.S.2d 70, 74 (N.Y. App. Div. 1st Dep't 1979) ("[The statements] do not concern themselves with plaintiff's property. Hence, they may not be the subject of an action for injurious falsehood"); *Angio-Med. Corp. v. Eli Lilly & Co.,* 720 F. Supp. 269, 272-74 (S.D.N.Y. 1989) (characterizing as defamatory claims that impute fraud, dishonesty, or unfitness to a company, and characterizing as injurious falsehood claims that would cause a listener to assume plaintiff's cosmetic skin and hair product did not meet safety and efficacy standards).

31

Here, statements made to third parties after May 17, 2010 include (1) Defendants providing the WPPD with unspecified "false information" which prompted the WPPD to conduct a raid at Korova, Compl. ¶¶ 43, 100-101, and (2) the comment by the manager of The Thirsty Turtle to a Korova employee referring to Korova as a "nig fest," *Id*. ¶¶ 19, 54, 65.  These alleged false statements, even given the import that Plaintiff ascribes to them, do not relate to any "goods or services" provided by Korova and thus cannot support an injurious falsehood claim.

Even assuming that Plaintiff could set forth false statements relating to Korova's "goods or services," Korova does not allege special damages "with the requisite specificity to proceed on an injurious falsehood claim."  *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 148-49 (E.D.N.Y. 2010) (finding that plaintiff's allegations of $500,000,000, "without any itemization," are "insufficient" to make out a claim); *see also Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*, 02 Civ. 9567 (KNF), 2003 WL 22410623, at *8 (S.D.N.Y. Oct. 21, 2003) (plaintiff's special damages claim based on loss of employment and the corresponding salary, were not sufficiently stated as required by New York law); *Rall v. Hellman*, 284 A.D.2d 113, 114, 726 N.Y.S.2d 629, 632 (N.Y. App. Div. 1st Dep't 2001) ("While costs, such as counsel fees, incurred in avoiding damage to plaintiff's reputation and business may be actionable under an injurious falsehood theory . . . , plaintiff's complaint was nevertheless deficient as he failed to identify his special damages with sufficient particularity.").  Here, Plaintiff merely alleges that Defendants' "misleading statements" caused a "substantial decrease in the number of patrons" and a "decrease in profits."  Compl. ¶ 111.  This is simply insufficient to state a claim for injurious falsehood under New York law and Defendants' motion for judgment on the pleadings for Plaintiff's injurious falsehood claim is GRANTED.

### iv.   Unfair Competition Based on Disparagement

To state a claim for unfair competition based on disparagement, a plaintiff must "allege some injurious falsehood intentionally uttered that caused the plaintiff to suffer actual damage." *Cubby, Inc. v. CompuServe, Inc.*, 776 F. Supp. 135, 142 (S.D.N.Y. 1991) (citation and internal quotation marks omitted).  Disparagement is a "matter which is intended by its publisher to be understood or which is reasonably understood to cast doubt upon the existence or extent of another's property ... or upon their quality."  *Brignoli v. Balch Hardy & Scheinman, Inc.*, 645 F. Supp. 1201, 1208 (S.D.N.Y. 1986) (quoting *Payrolls & Tabulating, Inc. v. Sperry Rand Corp.*, 22 A.D.2d 595, 597, 257 N.Y.S.2d 884 (N.Y. App. Div. 1st Dep't 1965)) (alterations in original) (internal quotation marks omitted).  As such, caselaw discussing unfair competition based on disparagement is generally found in the context of product disparagement.  *See generally Brignoli,* 645 F. Supp. at 1208.

Furthermore, a statement is deemed actionable only when it is made intentionally to a third party and results in "direct financial loss to the party whose interest is disparaged."  *Cubby, Inc.*, 776 F. Supp. at 142 (citation and internal quotation marks omitted).[12]  When the special damage alleged is the loss of customers, the individuals who ceased to be customers or refused to purchase must be specifically named.  *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 91 Civ. 4544 (MGC), 1992 WL 170559, at *4 (S.D.N.Y. July 2, 1992) (citing *Drug Research*

---

[12] The Court acknowledges that there is some authority for the proposition that special damages are not required when an allegedly false disparagement of plaintiff's product "directly impeaches the knowledge, skill, integrity, etc. of the owner of the goods as an individual or in respect to his business methods," but nevertheless, other cases indicate that "the complaint should be dismissed if special damages are not alleged with sufficient particularity." *Diehl & Sons, Inc. v. Int'l Harvester Co.*, 445 F. Supp. 282, 292 (E.D.N.Y. 1978) (citations and internal quotation marks omitted).  Here, the character of Korova's owners is not at issue.

*Corp. v. Curtis Pub. Co.*, 7 N.Y.2d 435, 441, 166 N.E.2d 319, 322 (N.Y. 1960)). Here, as discussed above, Plaintiff has failed to indicate with any specificity the customers it has lost due to Defendants' alleged conduct, nor has Plaintiff demonstrated any quantitative and itemized financial loss. This is insufficient to satisfy the special damages requirement. *El Greco Leather Products Co., Inc. v. Shoe World, Inc.*, 623 F. Supp. 1038, 1045 (E.D.N.Y. 1985), *aff'd*, 806 F.2d 392 (2d Cir. 1986) (finding that complaint alleging damages to business, reputation and goodwill "in an amount not less than $42,000,000" did not allege special damages with sufficient particularity). *Cf. Fashion Boutique of Short Hills, Inc.*, 1992 WL 170559, at *4 (denying dismissal of unfair disparagement claim where plaintiff alleged that the relevant market was so limited that a gain of a customer by defendant necessarily meant a loss of a customer by plaintiff). Accordingly, Defendants' motion for judgment on the pleadings for Plaintiff's unfair competition based on disparagement claim is GRANTED.

### v. Tortious Interference with Business Relations

Plaintiff alleges that Defendants "interfere[d] with Plaintiff's relationship with its [African-American] clientele and the public at large" when "solely out of malice," Defendants "used dishonest and unlawful means in attempt to create a record of alleged illegal activity at Korova, with the intention that these records would later serve as the underlying basis for filing unfounded eviction proceedings against Korova." Comp. ¶¶ 136-37. To set forth a claim for tortious interference with business relations, a plaintiff must allege that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008).

34

The "conduct constituting tortious interference with business relations is, by definition, conduct, directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." *Armored Grp., LLC v. Homeland Sec. Strategies, Inc.,* 07 Civ. 9694, 2009 WL 1110783, at *2 (S.D.N.Y. Apr. 21, 2009) (citing *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192, 818 N.E.2d 1100, 1104 (N.Y. 2004)).

As previously addressed in the Court's analysis of Plaintiff's § 1981 claim, Section II(b)(ii), Plaintiff has failed to adequately set forth specific business relationships with which Defendants allegedly interfered. *See Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2012) (finding that plaintiff failed to identify any specific third-parties with which it had business relations when plaintiff merely referred to "existing customers" and "major companies" with which it had "strong business relationships.") (internal quotation marks omitted); *Solar Travel Corp. v. Nachtomi*, 00 Civ. 3564 (AGS), 2001 WL 641151, at *10 (S.D.N.Y. June 8, 2001) (finding no allegation of the loss of any specific relationship when plaintiff stated, without any details as to the identity of third-parties, that it "lost business from its customers ... as well as lost prospective business from other international airlines") (citation and internal quotation marks omitted); *Envirosource, Inc. v. Horsehead Res. Dev. Co.,* No. 95 Civ. 5106, 1996 WL 363091, at *14 (S.D.N.Y. July 1, 1996) (noting that "[a] general allegation of interference with customers without any sufficiently particular allegation of interference with a *specific contract or business relationship* will not withstand a motion to dismiss") (emphasis in original) (citation and internal quotation marks omitted).  Accordingly, Defendants' motion for judgment on the pleadings with respect to the claim for tortious interference with business relations is GRANTED.

### vi.  Fraudulent Misrepresentation

Plaintiff alleges that prior to signing the lease, PRE represented to Plaintiff that it had physical possession of the liquor license issued to the previous tenant and that it would transfer the liquor license to Plaintiff upon signing of the lease.  Compl. ¶¶ 7, 139.  According to Plaintiff, it relied on PRE's representation that it possessed the liquor license and that it would be transferred to Plaintiff, thereby allowing Korova to sell the liquor at the establishment immediately upon signing the lease.  *Id.* ¶¶ 140, 142.  According to Plaintiff, shortly after executing the lease, Silverman revealed to Plaintiff that he did not have physical possession of the liquor license.  *Id.* ¶¶ 8, 143.

Under New York law, a plaintiff asserting fraudulent misrepresentation must plead the following:  (1) the defendant made a material false statement, (2) with the intent to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.  *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 523 (S.D.N.Y. 2011).  Fed. R. Civ. P. 9(b) requires that a plaintiff allege facts that "give rise to a strong inference of intent to defraud."  *Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 545 (S.D.N.Y. 2007) (citation and internal quotation marks omitted).  "Although malice, intent, knowledge and other condition of mind of a person may be averred generally, . . . this leeway is not a license to base claims of fraud on speculation and conclusory allegations."  *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (quoting *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir. 1995)) (internal quotation marks omitted).  "Plaintiffs must allege facts that give rise to a strong inference of fraudulent intent, which may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong

circumstantial evidence of conscious misbehavior or recklessness." *Id.* (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).  Moreover, "even in the case where the fraud pleaded is completely within the opposing party's knowledge, a plaintiff still must provide a statement of facts upon which plaintiff's belief is founded, and which supports a strong inference of fraud." *Henneberry*, 532 F. Supp. 2d at 546.

Here, Plaintiff has failed to adequately plead intent to defraud.  Plaintiff asserts that Silverman knew, or at least should have known, that PRE did not have the liquor license before Korova executed the lease agreement on March 27, 2007.  Compl. ¶¶ 143-44.  However, the Complaint does not indicate the motive for Defendants' alleged conduct, nor does it allege sufficient facts to establish conscious misbehavior or recklessness.  Merely alleging that Silverman entered into the lease with Korova without intending to provide the liquor license is insufficient to state a cause of action for fraudulent misrepresentation.  *Dune Deck Owners Corp. v. Liggett*, 85 A.D.3d 1093, 1095, 927 N.Y.S.2d 125, 127-28 (N.Y. App. Div. 2d Dep't 2011) ("[W]hile the plaintiff alleged that the defendant engaged in fraudulent misrepresentation by successfully bidding on the property without intending to close on the purchase, general allegations that a defendant entered into a contract with the intent not to perform are insufficient to state a cause of action to recover damages for fraud.").

Moreover, the facts alleged in the Complaint subsequent to the signing of the lease do not support any reasonable inference the Defendants acted with fraudulent intent.  On April 5, 2007, approximately two weeks after the parties entered into the original lease agreement, the parties entered into the First Lease Amendment, wherein PRE acknowledged that it had accidentally lost the liquor license and waived Plaintiffs' obligation to make rental payments for a period of

approximately four months.  Such conduct by the Defendants does not support an inference of intent.

Finally, the lease signed by Plaintiff on March 21 states, "This lease is specifically conditioned upon the approval by the New York State Liquor Authority of an application to be made by Tenant for an On-Premises Liquor License."  Defs.' Ex. C, ¶ 59.  By its terms, the lease agreement protected Plaintiff if it could not obtain a liquor license in its own name.  Therefore, it seems disingenuous for the Plaintiff to allege that it was harmed by Defendants' representations when Plaintiff could walk away from the lease if it did not obtain a liquor license.  *See generally 600 W. 115th St. Corp. v. 600 W. 115th St. Condo.,* 180 A.D.2d 598, 599, 580 N.Y.S.2d 307, 308 (N.Y. App. Div. 1st Dep't 1992) (Fraudulent misrepresentation claims properly dismissed because "justifiable reliance by plaintiff is dispelled by the plain language of plaintiff's lease.").  Accordingly, Defendants' motion for judgment on the pleadings for the fraudulent misrepresentation claim is GRANTED.

### d.  Plaintiff's Request to File an Amended Complaint

In its opposition papers, and without having previously received leave from this Court, Plaintiff asks the Court to "follow the efficient and fair practice of denying the motion to dismiss" or in the alternative "allow[] Plaintiff leave to file an amended Complaint to cure whatever deficiencies the Court may identify."  Pl.'s Opp. Mem. L. 3.  Plaintiff has not attached a Proposed Amended Complaint nor has it indicated how it would cure its pleading deficiencies.

"Ordinarily, dismissal based on failure to plead fraud with particularity under Fed.R.Civ.P. 9(b) is without prejudice to a plaintiff's filing an amended complaint to cure the deficient pleading[;]" however, "leave to amend may be denied when such amendment would be futile."  *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 455-56

38

(S.D.N.Y. 2001).  In this case, as noted by Defendants, the Court may properly deny Plaintiff's leave to amend as Plaintiff has failed to show how it might amend the complaint to cure its pleading deficiencies.  *See Campo v. Sears Holdings Corp.*, 371 Fed. App'x 212, 218 (2d Cir. 2010) ("[I]n light of plaintiffs' failure to provide a specific explanation of the manner in which they propose to cure the defects in their complaint, we reject the claim that the district court erred in not granting leave to amend")*; Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 89 (2d Cir. 1999) (upholding a district court's denial of leave to amend in part because plaintiffs failed to show how they might amend the complaint to cure the deficiencies in the pleadings, "especially in light of the insufficiency of facts to support a claim"); *U.S. ex rel. Phipps*, 152 F. Supp. 2d at 455-56 (finding it inappropriate to grant plaintiff's request to amend the complaint, in part, because the action had been pending for some time and plaintiff "ha[d] not proffered any evidence to suggest that she could even cure the Rule 9(b) deficiencies in her complaint."). Accordingly, Plaintiff's request for leave to amend is DENIED.

## III.    Conclusion

For the reasons stated above, Defendants' Motion for Judgment on the Pleadings is GRANTED in part and DENIED in part.  Defendants' Motion for Judgment on the Pleadings to dismiss Plaintiff's (1) § 1981 third-party contract; (2) malicious prosecution; (3) abuse of process; (4) injurious falsehood; (5) unfair competition based on disparagement; (6) tortious interference with business relations; and (7) fraudulent misrepresentation claims is GRANTED. Defendants' Motion for Judgment on the Pleadings to dismiss Plaintiff's (1) §1981 direct contract claim with PRE and (2) § 1982 claim is DENIED.  Plaintiff's request for leave to amend the Complaint is DENIED.  The Clerk's Office is respectfully directed to terminate the motion (Doc. 20).


SO ORDERED.

Dated:      February 1, 2013
            White Plains, New York

                                          Edgardo Ramos, U.S.D.J.

40